IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Daniel Shannon, ) | |
| ) | Civil Action No. 6:11-519-JFA-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Warden Bernard McKie; ) | |
| Associate Warden Joyner; ) | |
| Major Jackson: Captain Willie Davis; ) | |
| Jane Doe One;Jane Doe Two; Jane ) | |
| Doe Three; John Doe One; John Doe ) | |
| Two; Kimberly Story; Ofc. J. James; ) | |
| all in their individual and official ) | |
| capacities, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 29). The plaintiff, who is a state prisoner proceeding *pro se*, filed his complaint seeking relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

At all times relevant to the instant action, the plaintiff has been incarcerated in the Maximum Security Unit ("MSU") of Kirkland Correctional Institution ("KCI"), a division of the South Carolina Department of Corrections ("SCDC"). He is serving a life sentence for murder.

The plaintiff filed the instant action alleging that defendants Warden Bernard McKie, Associate Warden Joyner, Major Jackson, Captain Willie Davis, Sergeant Kimberly Story, and Officer J. James violated his First, Fourth, Eighth, and Fourteenth Amendment

rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by confiscating certain property from his prison cell, conducting an illegal search of the cell, denying or hampering his ability to freely practice his religion, and searching his property outside of his presence.

On June 17, 2011, the defendants filed a motion for summary judgment. On June 20, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Thereafter, the plaintiff filed a number of motions, which were addressed by this court in a Report and Recommendation and Order filed August 25, 2011. In that order, this court extended the time for the plaintiff to respond to the motion for summary judgment until September 9, 2011. On September 9th, the plaintiff filed a motion to strike the affidavit of defendant Sergeant Story (doc. 62) and a motion to prosecute Sergeant Story and defendant Officer Jacquan James (doc. 63).[1] He did not file a response to the motion for summary judgment.

## **FACTS PRESENTED**

The plaintiff claims that on February 3, 2011, his cell was searched by defendants Associate Warden Joyner and Major Jackson and five other employees of SCDC (comp. § IV, ¶¶ 5 – 12). The plaintiff says that those employees took some of his personal property, including mail and religious literature, allowed him to keep certain items inside his "legal box," and placed the remaining items in a trash bag (*id*. at ¶¶ 13 – 19). The plaintiff alleges that at the time of the search he was a party to at least two cases that were pending in the South Carolina Supreme Court and the South Carolina Court of Appeals, and, therefore, he needed to hold on to certain paperwork (*id*. at ¶ 19). The plaintiff

---

[1] As will be discussed below, should the district court adopt this court's recommendation and dismiss the instant action for failure to exhaust administrative remedies, these two nondispositive motions be rendered moot.

2

contends that he requested the return of the contents of the trash bag on several occasions, but those requests were either ignored or denied (*id*. at ¶¶ 19–21). He further alleges that defendant Sergeant Story searched his property outside of his presence, and he received a property form from Sergeant Story on February 25, 2011, indicating that she had confiscated "14 books" from the plaintiff. The plaintiff claims those materials were actually discovery materials (*id.* at ¶ 22).

On February 23, 2011, the Inmate Grievance Branch received a Step 1 grievance filed by the plaintiff regarding the confiscation of his property (def. m.s.j., ex. 2, Ann Hallman aff. ¶ 8, ex. A). On February 28, the Inmate Grievance Branch received another Step 1 grievance in which the plaintiff alleged that his property was searched outside his presence (*id.*, ex. B). On March 3, 2011, the Inmate Grievance Branch received another Step 1 grievance in which the plaintiff alleged that his legal materials were disposed of by SCDC employees (*id.*, ex. C). Finally, on March 21, 2011, the plaintiff sent another Step 1 grievance complaining that SCDC employees refused to give him his personal mail (*id.,* ex. D). On May 31, 2011, after the first three of those grievances were denied, the plaintiff filed Step 2 appeals of those complaints (*id*.). As of June 17, 2011, the date the defendants filed their motion for summary judgment, those Step 2 grievances were still pending. No decision has been rendered on the fourth grievance (*id.*). In his complaint, which was signed February 25, 2011, and filed with the Clerk's Office on March 9, 2011,[2] the plaintiff alleges that he exhausted his administrative remedies because the Inmate Grievance Branch refused to process his grievances (comp. ¶ 23).

---

[2]The complaint was delivered to prison authorities for forwarding to the court on March 2, 2011 (*see* doc. 1-2), which would be the filing date for statue of limitations purposes pursuant to *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

3

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

4

In their motion for summary judgment, the defendants first argue that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. See *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. "[U]nexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record*." Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

Following the incident on February 3, 2011, the plaintiff filed a Step 1 Grievance, which was received by the Inmate Grievance Branch on February 23, 2011. Two days later, the plaintiff signed his complaint and thereafter delivered the complaint to prison authorities for mailing to the district court, without having waited for a final determination on his grievance. He then filed three additional grievances concerning his complaints after the commencement of this action. The plaintiff has not received a final determination on any of the four grievances.

It is well settled that "a SCDC prisoner must wait approximately 114 days from presenting his Step 1 Grievance to the prison to file a complaint in federal court." *Malik v. Ward*, 8:08-cv-1886-RBH, 2010 WL 936777, at *3 (D.S.C. March 16, 2010).[3] However, in this case, the plaintiff did not wait for the requisite time period to run prior to filing this action in federal court. He did not even wait the 40 days allowed for a response to a Step 1 grievance.

---

[3]"The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik*, 2010 WL 936777, at *2 n.4.  As noted in *Jones v. Kay*, the time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
> (3) the Warden should respond to the grievant in writing within forty (40) days;
> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

*See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter.
No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007).

6

Instead, the record clearly reflects that the plaintiff filed this lawsuit just a few days after he submitted his first Step 1 grievance and several days before the Inmate Grievance Branch received the remainder of his grievances concerning this matter. Further, he did not exhaust all administrative remedies available to him – e.g., completing the Step 2 grievance process or appealing to the Administrative Law Court. In addition, as pointed out by the defendants, because plaintiff waited only a few days between submitting an institutional grievance and commencing litigation, he cannot support his contention that the defendants "refused" to process his grievances. On the contrary, the plaintiff's grievances have been, or are being, processed by the Inmate Grievance Branch (Hallman aff. ¶¶ 8-10).

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 29) be granted and the plaintiff's complaint be dismissed without prejudice for failure to exhaust administrative remedies. Furthermore, should the district court adopt this court's recommendation, the plaintiff's pending nondispositive motions will be rendered moot.

s/ Kevin F. McDonald
United States Magistrate Judge

September 28, 2011
Greenville, South Carolina